Scott ARMSTRONG, et al., Plaintiffs,

v.

**EXECUTIVE OFFICE OF
the PRESIDENT, et
al., Defendants.**

Civ. A. No. 89–142 (CRR).

United States District Court,
District of Columbia.

Sept. 3, 1993.

Michael E. Tankersley, Public Citizen Litigation Group, with David C. Vladeck, Public Citizen Litigation Group, Washington, DC, were on the briefs, for plaintiffs.

David J. Anderson, Atty., U.S. Dept. of Justice, Civ. Div., Washington, DC, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., J. Ramsey Johnson, U.S. Atty., D.D.C. and Elizabeth A. Pugh, Jason R. Baron, Anthony J. Coppolino, Peter D. Coffman, and Pamela A. Moreau, Attys., U.S. Dept. of Justice, Civ. Div., were on the briefs, for defendants.

### *OPINION*

CHARLES R. RICHEY, District Judge.

Before the Court is the Plaintiffs' Motion to Compel the production of a *Vaughn* index for materials located with the Defendant Archivist pursuant to a Protective Order entered in *United States v. Weinberger*. Caspar Weinberger has filed a Motion to Intervene for the purpose of opposing the Plaintiffs' Motion, which the Court shall grant as unopposed.[1]

After careful consideration of the Motion to Compel, all the papers filed by the parties, the underlying law, and the entire record in this action, the Court shall grant the Plaintiffs' Motion to Compel and shall order the Defendants to produce a *Vaughn* index for these materials.

1. The Plaintiffs informed the Court that they did not oppose Mr. Weinberger's Motion to Intervene. *See* Plaintiffs' Response to Motion to Intervene.

2. These positions were adopted by the Defendants before the Court of Appeals' recent deci-

### I. *BACKGROUND*

The Plaintiffs brought this suit against the Executive Office of the President, the National Security Council, and the Archivist of the United States, *inter alia,* under the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101–2118, 2901–2910, 3101–3107, and 3301–3324, the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.,* and the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. The Plaintiffs' request for relief was twofold. First, they requested that the Defendant agencies' record keeping guidance for the management of electronic records, such as e-mail, be declared invalid because the guidelines permitted the destruction of records contrary to the FRA. Second, the Plaintiffs requested disclosure under FOIA of various materials preserved on the Defendants' electronic communication systems.

In an Opinion dated January 6, 1993, the Court granted the Plaintiffs summary judgment as to their FRA claim and ordered the Defendants to promulgate new guidelines for the management of electronic federal records. *Armstrong v. Executive Office of the President,* 810 F.Supp. 335 (D.D.C.1993). The Court of Appeals for the District of Columbia Circuit affirmed that decision and remanded the case to this Court on a variety of issues. *See Armstrong v. Executive Office of the President,* 1 F.3d 1274 (D.C.Cir.1993).

Still pending before the Court is the Plaintiffs' FOIA request contained in Count I of their Complaint. Many of the electronic materials originally requested by the Plaintiffs have subsequently been printed out in paper form. As the Defendants in the past have taken a different position with respect to records that are solely in electronic format ("electronic records") and those also printed out in paper form ("paper records"),[2] the

sion in this case, which held that the paper copies did not include all of the essential information contained on the electronic records. *See Armstrong v. Executive Office of the President,* 1 F.3d 1274 (D.C.Cir.1993).

Court has attempted to resolve the outstanding FOIA claim by dealing with the Plaintiffs' FOIA requests for paper and electronic records separately. In an effort to resolve the Plaintiffs' FOIA claim as to paper materials, the Court recently granted the Plaintiffs' Motion to Compel completion of the *Vaughn* index as to all of these paper materials and set a schedule for the filing of dispositive motions as to these paper records. *Armstrong v. Executive Office of the President*, 829 F.Supp. 1 (D.D.C.1993) (order granting Plaintiffs' Motion to Compel a *Vaughn* index for paper materials).

## II. THE PLAINTIFFS' MOTION TO COMPEL

The Plaintiffs' latest Motion requests that the Defendants be compelled to prepare a *Vaughn* index pursuant to FOIA for materials obtained by Caspar Weinberger in the criminal case *United States v. Weinberger*, Cr. Nos. 92–235 and 92–416. 1992 WL 294877.[3] In response to a subpoena issued in the *Weinberger* case, the White House Communications Agency performed a "keyword" search of a subset of the computer tapes which had been preserved by Order of this Court in the *Armstrong* litigation. The search yielded 457 notelogs and 1,046 other documents. *See* Plaintiffs' Motion to Compel at 4–5. These materials were then printed out in "hard," or paper, copy and turned over to Mr. Weinberger to assist in his defense in the criminal action. Due to the classified nature of the materials, they were released to Mr. Weinberger by the Government subject to a Protective Order pursuant to the Classified Information Procedures Act, 18 U.S.C.App. IV, § 3. *See* Protective Order, Exhibit B, Defendants' Opposition. The Protective Order was later modified in that the materials were moved to the Archives. Mod-

ification of Protective Order, Exhibit A, Defendants' Opposition.[4] These materials were originally kept at a "sensitive compartmentalized information facility accredited for the storage, handling and control of classified information." *Id.* at 2.

In their Motion, the Plaintiffs contend that the materials printed in paper format pursuant to the subpoena in *Weinberger* include materials that they have requested under FOIA.[5] The Plaintiffs claim that because this material has now been printed out in paper format and is now in the custody of the Archivist, the Defendants is obligated to prepare a *Vaughn* index of this material so that the Plaintiffs' FOIA claim for paper records can be resolved in its entirety. The Court agrees.

## III. THE WEINBERGER MATERIALS HERE ARE SUBJECT TO FOIA BECAUSE THEY ARE RECORDS IN THE POSSESSION OF A GOVERNMENT AGENCY AND BECAUSE THE PROTECTIVE ORDER ISSUED BY JUDGE HOGAN IN THE WEINBERGER CRIMINAL CASE DOES NOT EXEMPT THE WEINBERGER MATERIALS FROM DISCLOSURE UNDER FOIA

**A. The *Weinberger* materials are agency records in the possession of the Government and therefore are subject to FOIA.**

It is undisputed that the *Weinberger* materials at issue here were printed out by the Government from the computer tapes in question in this litigation. Therefore, it is clear that these materials include records created by the Government agencies sued as Defendants in this litigation and that these records may be responsive to the Plaintiffs'

---

**3.** The criminal case related to Mr. Weinberger's appearances and testimony before the congressional committees investigating the Iran–Contra matter.

**4.** The Protective Order and the subsequent Modification are attached hereto and incorporated herein by reference.

**5.** The Defendants dispute that the *Weinberger* materials are within the scope of the Plaintiff's

existing FOIA request. However, the Defendants recognize that the Plaintiffs' right to make a new FOIA request and thus realize that whether these materials are within the scope of the Plaintiffs' original FOIA request is not dispositive of whether these materials are subject to FOIA. Defendants' Opposition, filed August 2, 1993, at 9 n. 7. The Court agrees with the Defendants and therefore does not address that issue.

FOIA request. In addition, it is undisputed that the *Weinberger* materials are currently in the custody of the Archivist, which is a Government agency and a Defendant in this litigation. Accordingly, the Court concludes that these materials are subject to FOIA because they were created by a Government agency and are under the control of a Government agency at the time of the FOIA request. *Department of Justice v. Tax Analysts*, 492 U.S. 136, 144–55, 109 S.Ct. 2841, 2847–53, 106 L.Ed.2d 112 (1989). The fact that these records were originally in the possession of the National Security Council before and are now in the custody of the Archivist does not prevent them from being subject to FOIA. *See McGehee v. CIA*, 697 F.2d 1095, 1109, *modified on reh'g*, 711 F.2d 1076 (D.C.Cir.1983) (the mere transfer of records from one agency to another does not exempt records from FOIA).

**B.  The Protective Order issued by Judge Hogan in the *Weinberger* case does not exempt them from disclosure under FOIA.**

■ The Defendants and Mr. Weinberger contend that disclosure of this material under FOIA is barred by a Protective Order entered by Judge Hogan in *Weinberger*. *Morgan v. Department of Justice*, 923 F.2d 195, 197 (D.C.Cir.1991) (a court order sealing records supersedes an agency's obligation to disclose records under FOIA where the order was issued with the intent to prohibit disclosure); *see GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 386–87, 100 S.Ct. 1194, 1201–02, 63 L.Ed.2d 467 (1980). They contend that the Protective Order, by its terms, bars disclosure of this material to anyone other than Mr. Weinberger or his designee. Furthermore, Mr. Weinberger maintains that, under the terms of the Protective Order, these materials are within his control, not the Government's, and therefore these records are not subject to FOIA.

However, the Government and Mr. Weinberger's reliance on the Protective Order is misplaced. Our Court of Appeals in *Morgan* stated that, in deciding whether a court order prevents an agency from disclosing records under FOIA, the question is whether the court order at issue intended to prohibit the agency from disclosing the records. *Morgan*, 923 F.2d at 197. Furthermore, the agency must demonstrate that the order prohibits it from disclosing the records. *Id.* The Court concludes that the Government has not shown that the Protective Order in the *Weinberger* case prohibits disclosure of the material at issue here for several reasons.

First, the plain language of the Protective Order here does not prohibit disclosure of these materials under FOIA. The plain language of the Protective Order directs that the materials be "preserved at the National Archives for historical purposes." Modification of Protective Order, ¶ 1, Exhibit A, Defendants' Opposition. It also states that the *Weinberger* information "is now and will remain the property of the Government." Protective Order, ¶ 11, Exhibit B, Defendants' Opposition. Giving plain meaning to this language, the Court concludes that the information here is the property of the Government and that it was intended for historical preservation.

Furthermore, the Court notes that the Protective Order provides that "any document received by defendant in discovery from any United States Government agency or entity shall be presumed to contain classified information until otherwise determined by the appropriate agency or entity." *Id.* ¶ 2a. Therefore, instead of being barred from releasing this material, the Government was given the responsibility of deciding whether this information should remain classified.

■ Second, the clear purpose of the Protective Order does not prevent disclosure of this material under FOIA. The Protective Order in *Weinberger* was issued pursuant to the Classified Information Procedures Act ("CIPA"), whose purpose was to harmonize a criminal defendant's right to exculpatory material with the Government's right to protect classified information. 18 U.S.C. App. IV § 3 (the court shall issue an order to protect against the disclosure of any classified information disclosed by the United states to any defendant); *see United States v. Wilson*, 571 F.Supp. 1422 (S.D.N.Y.1983).

Furthermore, the CIPA does not limit an agency's decision making power as to the fate of classified materials disclosed to a defendant under the CIPA. 18 U.S.C.App. IV § 9, Historical Note 11) (After criminal proceedings are concluded, the originating agency shall determine the final disposition of classified materials under the CIPA). Therefore, it is clear that the Protective Order here was designed to give Mr. Weinberger every opportunity to defend himself in the criminal case before judge Hogan while, at the same time, protecting the Government's right to keep these materials classified. However, it is also clear that the Protective Order was not intended to act as an limitation on the Government's ability to determine the final disposition of these classified materials. The Protective Order states that these materials may be subject to later disclosure and in no way limits the access of any party to this material under FOIA. Our Court of Appeals has made clear that a limitation on the method of access to certain records is not synonymous with a prohibition on their future releases. *See Morgan*, 923 F.2d at 197. This is especially true where, as here, the Protective Order by its terms leaves future decisions as to the classified nature of the material to the appropriate Government agency.[6]

The only materials clearly intended to be exempt from FOIA include trial materials prepared by defense counsel for Mr. Weinberger. However, the Court notes that the Plaintiffs did not request this material. They simply ask the Government to search the *Weinberger* materials for documents responsive to their FOIA request and to prepare a Vaughn index of those materials that are responsive to the request but which the Government will not release.[7]

## C. The fact that these records were printed out in paper form while the Plaintiffs' FOIA request was pending does not relieve the Government of its obligation to process these records under FOIA.

The Defendants argue that the plaintiffs are beyond the bounds of FOIA in demanding paper records that were converted from electronic to printed form in December, 1992, where plaintiffs had submitted their revised FOIA request in February, 1992. The Defendants contend that a broad application of FOIA requests would require the perpetual updating of these requests.

The Court does not agree. When conducting a search for responsive documents under FOIA, an "agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation." *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1101 (D.C.Cir.1983) (standard of reasonableness governs the adequacy of an agency's response to a FOIA request). In this case, the Court concludes that the Government has failed to meet its burden of reasonableness, and therefore, the Court shall not shield this material from FOIA. *Id.* at 1100. The Defendants here have not advanced sufficient factual support to justify why it is reasonable to exclude the material in question from FOIA. Given that the Plaintiffs' FOIA claim in this case remains *sub judice*, the Court does not believe that the Plaintiffs' request for a *Vaughn* index of the Weinberger materials is untimely. In addition, the Court believes that such a request is reasonable because these documents are easily accessi-

6. The Court in *McGehee* noted that an agency may, under certain circumstances, limit its response to a FOIA request to all materials existing as of the date of the request. *McGehee v. CIA*, 697 F.2d 1095, 1102–03 *modified on reh'g*, 711 F.2d 1076 (D.C.Cir.1983). However, the Court noted that an agency must demonstrate that such a "time-of-request cut-off date" is reasonable under the circumstances, and that a uniform policy setting forth the standard of reasonableness was preferable. *Id.* at 1103–04. The Defendants have not presented any such guidelines or rationale justifying a cut-off date in this case.

7. As there is no question as to whether these materials can be released under the Protective Order, it is not necessary to remand this matter to the agency to seek clarification of the effect and intent of the Protective Order from Judge Hogan. *See Morgan v. Department of Justice*, 923 F.2d 195, 198 (D.C.Cir.1991) (an agency cannot rely on the mere existence of a protective order in a case without inquiring into its intended effect as to the materials requested).

ble, having been printed months ago, and because the request here is discrete and limited in scope.

## IV. *CONCLUSION*

The Court concludes that the materials printed out in hard copy pursuant to subpoena in *United States v. Weinberger* are subject to the FOIA. Accordingly, the Court shall grant the Plaintiffs' Motion to Compel production of a *Vaughn* index for these materials. Nothing in the foregoing shall preclude the Defendants from asserting any of the Exemptions under FOIA in connection with the *Weinberger* materials. The Court merely holds that these materials are within the jurisdiction of the Court and are subject to the provisions of FOIA.

The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

## *ORDER*

Before the Court is the Plaintiffs' Motion to Compel the production of a *Vaughn* index for materials located with the Defendant Archivist pursuant to a Protective Order entered in *United States v. Weinberger* and Caspar Weinberger's Motion to Intervene for the purpose of opposing the Plaintiffs' Motion.

After careful consideration of the Motions, all the papers filed by the parties, the underlying law, and the entire record in this action, and for the reasons articulated in the Court's Opinion of even date herein, it is, by the Court, this 3rd day of September, 1993,

ORDERED that Caspar Weinberger's Motion to Intervene shall be and hereby is GRANTED as unopposed; and it is

FURTHER ORDERED that the Plaintiffs' Motion to Compel production of a *Vaughn* index of printed copies of records obtained by the Defendants pursuant to subpoena in *United States v. Weinberger* shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Defendants shall search the material printed out pursuant to subpoena in *United States v.*

*Weinberger* for documents responsive to the Plaintiffs' pending FOIA request; and it is

FURTHER ORDERED that the defendants shall prepare a *Vaughn* index of the *Weinberger* materials and shall file same with the Court on or before 4 p.m. on October 8, 1993; and it is

FURTHER ORDERED that the parties in the above-captioned case shall appear before the Court at 3:00 p.m. on September 8, 1993, for a status conference. At that time, they should be prepared to discuss how best to resolve all of the pending matters in this litigation and to propose a schedule for the early resolution of same.

DEFENDANT'S EXHIBIT B

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

United States of America

v.

Caspar W. Weinberger, Defendant.

Criminal No. 92–0235–TFH

### PROTECTIVE ORDER

The Court, having considered the motion of the United States for a protective order, and all other papers and proceedings related thereto:

It is hereby ORDERED that, pursuant to Section 3 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. IV § 3, the following Protective Order is entered:

1. The Court finds that this case will involve information that has been classified in the interest of national security. The storage, handling and control of this information will require special security precautions. The purpose of this Order is to establish procedures that must be followed by counsel and the parties in this case. These procedures will apply to all *pretrial* matters concerning this case and may be modified from time to time by further order of the Court acting under its inherent supervisory authority to ensure a fair and expeditious trial.

2. *Definitions.* The following definitions shall apply to this Order:

    a. "Classified information" shall mean:

      i) any document or information that has been classified by any executive agency in the interests of national security or pursuant to Executive Order 12356 as "confidential," "secret," "top secret" or "sensitive compartmented information"; or

      ii) any document or information now or formerly in the possession of a private party that (A) has been derived from information from the United States Government that was classified and (B) has subsequently been classified by the Government pursuant to Executive Order 12356 as "confidential," "secret," "top secret" or "sensitive compartmented information";

    provided, however, that any document received by defendant in discovery from any United States Government agency or entity shall be presumed to contain classified information until otherwise determined by the appropriate agency or entity.

    b. "Document" shall mean any material containing information. The term "document" shall include, without limitation, letters, reports, summaries, memoranda, notes, communications, telexes, cables, telecopies, reports, photographs, charts, graphs, maps, invoices, accountings, worksheets and messages. The term "document" also shall include, without limitation, all recordings of information on magnetic, electronic or optical media such as audio or video tapes, computer tapes or disks, films and all manner of electronic data processing storage.

    c. "Access to classified information" means having access to, reviewing, reading, learning or otherwise coming to know in any manner any classified information.

    d. "SCIF" shall mean a sensitive compartmented information facility accredited for the storage, handling and control of classified information.

3. Christine Gunning shall be the Court Security Officer. The alternate Court Security Officers shall be James Londergan, Michael Macisso, Barbara Russell, Joan Kendrall, and Charles Alliman.

4. The Court Security Officer shall arrange for the creation, construction, maintenance and operation of a SCIF at 1025 Connecticut Avenue, N.W., Washington, D.C. for the use of the defendant, counsel for the defendant and employees of counsel for the defendant and authorized witnesses, including their counsel, accompanied by counsel for the defendant twenty-four hours daily every day of the year, including weekends and holidays. The SCIF shall contain separate working areas for the counsel for the defendant and will be outfitted with any secure office equipment requested by the defendant that is reasonable and necessary to the preparation of his defense. The Court Security Officer, in consultation with counsel for the defendant, shall establish procedures to assure that the SCIF may be maintained and operated in the most efficient manner consistent with the protection of classified information. Finally, pending the availability of defendant's SCIF, defendant, counsel for the defendant, employees of counsel for the defendant, and authorized witnesses, including their counsel, accompanied by counsel for the defendant shall have access twenty-four hours daily to the Independent Counsel's SCIF, to the extent space is available, for appropriate examination and use of any classified materials provided through discovery by the Government, subject to the general provisions of this Order.

5. *Filing of Papers By Defendant.* Any pleading or other document filed by defendant shall be filed under seal with the Court through the Court Security Officer. The Court Security Officer shall promptly examine the pleading or document and, in consultation with representatives of the appropriate agencies, determine whether the pleading or document contains classified information. If the Court Security Officer determines that the pleading or document contains classified information, he or she shall ensure that that portion of the document, and only that portion, is marked with the appropriate classification marking and remains under seal. All portions of all papers filed by defendant that

do not contain classified information shall be immediately unsealed by the Court Security Officer and placed in the public record. The Court Security Officer shall immediately deliver under seal to the Court and the Office of Independent Counsel any pleading or document to be filed by defendant that contains classified information; the Court shall then direct the Clerk to enter on the docket sheet the title of the pleading or document, the date it was filed, and the fact that it has been filed under seal with the Court Security Officer.

6. *Filing of Papers By The Government.* Only the portions of pleadings or documents filed by the Government containing classified information shall be filed under seal with the Court through the Court Security Officer.

7. *Protection Of Classified Information.* The Court finds that, in order to protect the classified information involved in this case, no person except defendant, counsel for defendant, employees of counsel for defendant, or any potential witnesses or their counsel, shall have access to the classified information involved in this case. No counsel for defendant, employee of counsel for defendant, or defense witness shall have access to any classified information in this case unless that person shall first have:

    a. received an approval for access to classified information from the Court or any of the Court Security Officers designated under ¶ 3 of this Order; and

    b. signed the Memorandum of Understanding in the form attached hereto agreeing to comply with the terms of this Order.

8. *Access To Classified Information.* The defendant, counsel for the defendant, employees of counsel for the defendant, and any potential witnesses and their counsel shall have access to classified information only as follows:

    a. All classified information produced by the Government to the defendant in discovery or otherwise, and all classified information possessed, created or maintained by the defendant, shall be stored, maintained and used only in the SCIF.

    b. The defendant, counsel for the defendant, and employees of counsel for the defendant shall have free access to the classified information made available to them in the SCIF and shall be allowed to take notes and prepare documents with respect to those materials.

    c. No person, including the defendant, counsel for the defendant, employees of counsel for the defendant, or any potential witnesses and their counsel shall copy or reproduce any classified information in any manner or form, except with the approval of the Court Security Officer or in accordance with procedures established by the Court Security Officer for the operation of the SCIF.

    d. All documents prepared by the defense (including, without limitation, pleadings or other documents intended for filing with the Court) that do or may contain classified information must be prepared in the SCIF on TEMPEST-approved word processing equipment and in accordance with the procedures approved by the Court Security Officer. All such documents, and any associated materials (such as notes, drafts, copies, typewriter ribbons, magnetic recordings and exhibits) containing classified information shall be maintained in the SCIF unless and until the Court Security Officer determines that those documents or associated materials are unclassified in their entirety.

    e. The defendant, counsel for the defendant, employees of counsel for the defendant, and any potential witnesses and their counsel, shall discuss classified information only within the SCIF *or* in an area authorized by the Court Security Officer.

    f. The defendant, counsel for defendant, employees of counsel for defendant and any potential witnesses and their counsel shall not discuss classified information over any standard commercial tele-

phone instrument or office intercommunication system.

g. Any documents written by the defense that do or may contain classified information shall be transcribed, recorded, typed, duplicated, copied or otherwise prepared only by persons who have received an appropriate approval for access to classified information.

9. *Classified Information Procedures Act.* Procedures for the public disclosure of classified information by the defense shall be governed by Sections 5 and 6 of CIPA. No classified information may be disclosed by the defense except:

a. To the Court, court personnel, and government attorneys and their agents and employees identified by the Court Security Officer as holding proper approvals for access to classified information;

b. To representatives of the agency or department originating the classified information who have been identified by the Court Security Officer as holding proper security clearances and having the need to know the classified information;

c. In accordance with the procedures of CIPA and the procedures established by the Court Security Officer; and

d. To persons who have been authorized to have access to classified information pursuant to this Order or to CIPA.

10. Any unauthorized disclosure of classified information may constitute violations of United States criminal laws. In addition, any violation of the terms of this Order shall be immediately brought to the attention of the Court and may result in a charge of contempt of Court and possible reference for criminal prosecution. Persons subject to this Order are advised that direct or indirect unauthorized disclosure, retention, or negligent handling of classified documents or information could cause serious damage, and in some cases exceptionally grave damage, to the national security of the United States, or could be used to the advantage of a foreign nation against the interests of the United States.

11. All classified information to which defendant, counsel for defendant, employees of counsel for defendant, or any potential witnesses and their counsel have access in this case is now and will remain the property of the Government. The defendant, counsel for the defendant, employees of counsel for the defendant, and defense witnesses shall return all classified information in their possession obtained through discovery from the Government in this case, or for which they are responsible because of access to classified information, upon demand of the Court Security Officer, after advance notice to the defense, opportunity for a hearing, and approval from the Court. The notes, summaries and other documents prepared by the defense that do or may contain classified information shall remain at all times in the custody of the Court Security Officer for the duration of this case. At the conclusion of this case, all such notes, summaries and other documents are to be destroyed by the Court Security Officer in the presence of counsel for the defendant.

12. A copy of this Order shall be issued forthwith to counsel for defendant who shall be responsible for advising the defendant, employees of counsel for the defendant, and any potential witnesses and their counsel of the contents of this Order. The defendant, counsel for the defendant, any employee of counsel for the defendant and any defense witness to be provided access to classified information shall execute the Memorandum of Understanding described in paragraph 7 of this Order, and counsel for the defendant shall file executed originals with the Court under seal. These memoranda and all information contained therein shall not be available to any attorneys or other employees of the Office of Independent Counsel, its staff, or investigators. The execution and filing of the Memorandum of Understanding is a condition precedent for the defendant, counsel for the defendant, employees of counsel for the defendant, and defense witnesses to have access to classified information.

13. To facilitate the defendant's filing of notices as required under Section 5 of CIPA,

the Court Security Officer shall make arrangements with the respective agencies for a determination of whether materials or information either within the possession of the defense or about which the defense has knowledge and that the defense intends to use in any way at trial contain classified information. No materials or information thus submitted by the defense to the Court Security Officer pursuant to this paragraph shall be made available to any attorney or other employee of the Office of Independent Counsel, or its staff or investigators unless so ordered by the court, or so designated by the defense. Any and all of these items that are classified shall be listed in the defendant's CIPA Section 5 notice. The defendant shall also give notice of any unclassified information that he intends to use at trial, which may reasonably be expected to cause the disclosure of classified information in any manner.

Dated: June 30, 1992

/s/ Thomas F. Hogan
Thomas F. Hogan
United States District Judge

DEFENDANT'S EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

v.

Caspar Weinberger, Defendant.

Crim. Action No. 92-235

ORDER

Upon consideration of the defendant's motion to modify the protective order in the above-captioned case, and the government's opposition thereto, it is this 26th day of March, 1993, hereby

ORDERED that the motion to modify is DENIED except as follows:

1) the information contained in the defense SCIF shall be preserved at the National Archives for historical purposes and reasonable accommodations shall be made to allow the defendant access to the information as needed;

2) the material disclosed as potential Jenks Act statements, including the grand jury materials which shall remain confidential absent further order of the Court, shall be returned to the government and shall be maintained at the National Archives;

3) all other provisions of the protective order remain in effect.